UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JURIJUS KADAMOVAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 2:11-cv-258-WTL-MJD |
| ) | |
| CHARLES LOCKETT, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ENTRY FOLLOWING *PAVEY* HEARING**

This cause is before the Court following an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), which was held on March 3, 2016. The Plaintiff, Jurijus Kadamovas, was present via videoconferencing system and by counsel. The Defendants were present by counsel. In addition to documentary evidence, the Court heard testimony from the Plaintiff and several employees of the Penitentiary in Terre Haute, Indiana ("USP Terre Haute"): Melinda Caulton, Administrative Remedy Clerk and Associate Warden's Secretary; Unit Manager Michael Stephens; Case Counselor John Edwards; Case Manager Todd Royer; and the Plaintiff.

### I.   BACKGROUND

The Plaintiff, a federal inmate under sentence of death who is currently incarcerated in the Special Confinement Unit ("SCU") of the USP Terre Haute, has brought this civil rights action. On September 28, 2011, the Plaintiff filed his original Complaint, and on July 22, 2014, he filed an Amended Complaint, alleging numerous violations under the Religious Freedom

Restoration Act and the First, Fifth, and Eighth Amendments to the United States Constitution. The parties stipulate that the claims relevant to the *Pavey* hearing are as follows:

> allegations that defendants Charles Lockett, Michael Stephens (misnamed as Michael Stevens), John Edwards, Lt. Brace, Officer B. Brandenburg, Stanley Lovett (misnamed as Steven Levitt), and Dr. William E. Wilson: (1) used excessive force during a force feeding incident on September 29, 2010; (2) used excessive force while taking a blood sample on April 21, 2011; (3) inflicted cruel and unusual punishment by housing Plaintiff in an unhygienic cell on or around April 13, 2011; (4) inflicted cruel and unusual punishment by denying Plaintiff recreation while he was housed on the A-Range from roughly April 11, 2011 through May 21, 2011; (5) denied Plaintiff freedom of religious practices and rights from roughly April 13, 2011 through May 21, 2011; (6) denied Plaintiff's right to petition by obstructing his efforts to file administrative grievances from roughly April 13, 2011 through May 21, 2011; and (7) denied Plaintiff's right of access to the Courts from roughly April 13, 2011 through May 21, 2011.

Dkt. No. 104 at 3.

As an affirmative defense to these claims, the Defendants assert that the Plaintiff failed to comply with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, prior to filing this action.[1]

## II.     TESTIMONY

The Plaintiff testified that he was prevented from exhausting remedies on issues in the Amended Complaint because his Unit Team (Unit Manager Michael Stephens, Case Counselor John Edwards, and Case Manager Todd Royer) prevented him from doing so while he was confined to the A-Range at the SCU.[2] The Plaintiff also testified that the Unit Team prevented his grievances from being filed once he was released from the A-Range following his hunger

---

[1] The Defendants concede that the Plaintiff has exhausted his administrative remedies with regard to one additional claim, which is alleged in paragraph 84 of the Amended Complaint and relates to other inmates' access to the Plaintiff's electronic discovery material.

[2] The Plaintiff was moved to an isolation cell on the A-Range of the SCU during his hunger strikes to enable the prison staff to closely monitor his fluid and calorie intake, ensure that he remained medically stable, and prevent other inmates from providing him with food.

strikes.[3] Specifically, with regard to the allegations in Count I of the Amended Complaint, that the Defendants used excessive force during a force feeding incident on September 29, 2010, the Plaintiff testified that he attempted to file a grievance relating to this event shortly after ending the hunger strike:

> Q. And so you filed a BP-8 and a BP-9 about the force feeding?
>
> A. Yes. And I never received any response to BP-9.
> …
>
> Q. So you think you either gave it to Mr. Edwards or Mr. Stephens?
>
> A. Yes.
> …
> Q. So you think you would have filed it September, maybe September 29th, 30th, or October 1st?
>
> A. Something in that period. It was very fast after event was happening.
> …
> Q. How did you file the BP-9? Who did you give it to?
>
> A. [The only ones] who would be able to pick it up was Mr. Edwards or Mr. Stephens. Less likely . . . it was Royer.

*Pavey* Hearing Transcript, 50:18-20; 51:13-15; 51:25-52:3; 53:15-19.

Counts II-VII of the Amended Complaint relate to events during a second hunger strike when the Plaintiff was confined to the A-Range from around April 13, 2011, to May 21, 2011. The Plaintiff testified that he filed individual grievances relating to these events after the hunger strike ended because his Unit Team denied him access to grievance forms while confined to the A-Range. *See Pavey* Hearing Transcript, 54:21-55:12-14 ("[T]hey was not allowing me to have that. . . . Because it was empty cell, I don't have nothing. I just explained to him and I was asking [for] help to file the grievance form and he didn't respond, nothing."); 60:14-61:9; 87:25-88:18.

---

[3] The two relevant hunger strikes for purposes of this case were from September 7, 2010, until October 1, 2010, and from April 11, 2011, until May 21, 2011.

The Plaintiff testified that he advised his attorney and other inmates about his inability to follow the administrative remedy process due to the actions of his Unit Team. He also testified that following his release from the A-Range at the completion of his second hunger strike, he completed grievance forms relating to the events of the hunger strike and handed them to either Mr. Stephens or Mr. Edwards. Mr. Stephens or Mr. Edwards took the forms, but told him they were untimely. With the exception of a grievance that is an appeal of a disciplinary sanction, which was filed with the assistance of the Plaintiff's attorney, there are no records of any grievance filed for the events in the Amended Complaint relating to the hunger strike.

Testimony also was presented from Stephens, Edwards, and Royer – the Plaintiff's Unit Team – that they never refused to provide the Plaintiff with grievance forms during the 2010 and 2011 hunger strikes. The Plaintiff's Unit Team had the primary responsibility of providing him with grievance forms and assistance, though other prison officials could also provide the forms and assistance. Stephens testified that the Plaintiff did not ask him for a BP-8 or BP-9 during the first or second hunger strike and that he would have provided the Plaintiff with a grievance form if the Plaintiff had asked for one. He also would have taken and submitted a completed grievance form from the Plaintiff. If the Plaintiff had asked for assistance, Stephens would have found the appropriate person to help the Plaintiff. Further, he testified that the Plaintiff would have had access to his attorney during both hunger strikes.  Stephens added that he had never personally refused to pick up a grievance that he thought was late or untimely. Stephens had no difficulty communicating with the Plaintiff in English, and the Plaintiff was able to look over correspondence in English and respond properly to it.

Edwards testified that he did not recall whether the Plaintiff requested a grievance form from him during either hunger strike, but Edwards would have given the Plaintiff a grievance

4

form if the Plaintiff had asked. Further, he would have processed a completed grievance form had the Plaintiff given him one. Edwards would never refuse to collect or process a grievance that he considered untimely. The Plaintiff could receive and file grievance forms during the hunger strikes. Based on Edwards' day-to-day interactions with the Plaintiff, it is his understanding that the Plaintiff can speak, read, and write English. The Plaintiff never asked Edwards for assistance filing grievances during either hunger strike. If he had, Edwards would have sought out resources to help him.

Royer testified that he did not recall if the Plaintiff asked him for a grievance form during either hunger strike. If the Plaintiff had, Royer would have given him a form or ensured that someone else gave the Plaintiff the form. If Royer had received completed grievance forms from the Plaintiff, he would have turned them in. Royer never refused to collect a grievance form that he thought was untimely or late from an inmate. The Plaintiff did not ask Royer for help filling out a form during either hunger strike, but Royer would have helped him or found someone who could. Based on his interactions with the Plaintiff, it was Royer's impression that the Plaintiff could speak, read, and write English.

### III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

During the relevant period, USP Terre Haute had an administrative grievance process through which an inmate could seek formal review of a complaint related to any aspect of his imprisonment.[4] The Plaintiff was well acquainted with the process and had used the BOP's

---

[4] The federal Bureau of Prisons ("BOP") has promulgated an administrative remedy process that is codified in 28 C.F.R. § 542.10, et seq., and in BOP Program Statement 1330.18, Administrative Remedy Program. In order to exhaust his administrative remedies, an inmate must first file an informal remedy request, called a BP-8, with the appropriate institution staff member. If an inmate is not satisfied with the response to his BP-8, then he may bring his complaint to the Warden by filing a BP-9. If an inmate is not satisfied with the Warden's response to his BP-9, then he may appeal to the Regional Director by filing a BP-10. In general, the BP-10 must be filed with the Regional Director within 20 days of the date that the Warden

administrative remedy procedure approximately 215 times between his arrival at USP Terre Haute and July 25, 2014.

The Plaintiff does not dispute the accuracy of the entries in the Administrative Remedy Generalized Retrieval listing his administrative remedy filings from January 27, 2006, through July 25, 2014. This record shows that he exhausted numerous remedies, including Remedy Nos. 589711 and 593881, pertaining to allegations in paragraph 84 of the Amended Complaint.[5] However, the evidentiary record does not reflect that the Plaintiff exhausted any other remedies pertaining to the remaining allegations in the Amended Complaint.

The Plaintiff's constitutional and federal claims are subject to the exhaustion requirement set forth in the PLRA, as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). As to their affirmative defense, it is Defendants' burden to establish that administrative remedies were available to the Plaintiff and that the Plaintiff failed to exhaust those administrative remedies. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005). "For a prisoner to exhaust his remedies within the meaning of § 1997e(a), he must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Burrell v. Powers*,

---

signed the BP-9 response. If an inmate is not satisfied with the Regional Director's response to his BP-10, then he may appeal to the General Counsel by filing a BP-11. In general, the BP-11 must be filed with the General Counsel within 30 days of the date that the Regional Director signed the BP-10 response. An inmate who has filed administrative remedies at all required levels (i.e., an inmate who has filed a BP-8, BP-9, BP-10, and BP-11), and who has received a response to his BP-11 from the General Counsel, is deemed to have exhausted his administrative remedies as to the specific issue, or issues, raised in his filings.

[5] The claim in paragraph 84 is that "other inmates were given access to [Kadamovas's discovery materials], destroying or damaging much of the material." (Dkt. No. 64 at 17).

431 F.3d 282, 285 (7th Cir. 2005) (internal quotation marks omitted). In other words, exhaustion must occur before the Plaintiff files his suit. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

While the Seventh Circuit has not explicitly defined what constitutes "availability," it has cited with approval the Second Circuit's objective test, "under which the court looks at whether 'a similarly situated individual of ordinary firmness would have deemed the grievance procedures to be available.'" *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (quoting *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004)). Where prison employees refuse to provide an inmate with the necessary forms to participate in the administrative process, the remedy is unavailable to the inmate, and he is not required to follow the procedure. *See Swisher v. Porter County Sheriff's Dep't*, 769 F.3d 553, 555 (7th Cir. 2014). Further, "[p]rison officials may not take unfair advantage of the exhaustion requirement, . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit held that if the exhaustion issue is raised, courts must resolve it before merits discovery by employing a three-step analysis:

(1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.

(2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison

7

>    authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.
>
> (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

The Court held an evidentiary hearing on this matter to determine whether the Plaintiff has exhausted his administrative remedies. *See id.* (courts, not juries, should be the triers of fact on the issue of whether a prisoner/plaintiff exhausted his administrative remedies).

The evidence and testimony presented at the hearing do not support a finding that the remedy was unavailable to the Plaintiff. The Court credits the testimony of Stephens, Edwards, and Royer that they would have provided grievance forms to the Plaintiff had he requested them and would have submitted any grievance forms given to them by the Plaintiff and does not credit the Plaintiff's testimony that they refused to provide the forms or took the forms but told him that the forms were untimely. Moreover, the evidence presented established that the Plaintiff's English skills were sufficient to complete grievance forms and that the Defendants would have provided him with assistance if he had requested it. As such, the Defendants have met their burden to prove their affirmative defense that the Plaintiff failed to exhaust his available administrative remedies prior to filing the action.

## IV.    CONCLUSION

The Court finds that the Plaintiff has fully exhausted his administrative remedies only as to the issue raised in paragraph 84 of his Amended Complaint. Accordingly, the Court **GRANTS** the Defendants' Motion for Summary Judgment (Dkt. No. 74) as to all other allegations in the

Amended Complaint and dismisses all non-exhausted claims in the Amended Complaint without prejudice. The Court **DENIES AS MOOT** the Plaintiff's Motion for Leave to File Proposed Findings of Fact and Conclusions of Law (Dkt. No. 114). This case will proceed to trial to resolve the allegation contained in Paragraph 84 of the Amended Complaint. The Court will request that Magistrate Judge Dinsmore conduct a pretrial conference to establish a schedule to prepare this case for trial.

SO ORDERED: 4/21/16

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.